Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

District of Col[umbia]

Jean Richard Severin
PTAH Global Initiatives
P.O. Box 310488 Jamaica NY 11431

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

Clinton Foundation, Anthony Rodham
Bill Clinton, Hillary Clinton

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

Case: 1:25-cv-04234    JURY DEMAND
Assigned To : Boasberg, James E.
Assign. Date : 12/5/2025
Description: TRO/Prel. Inj. (D-DECK)

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR A CIVIL CASE

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   Name: Jean Richard Severin, PTAH Global Initiatives
   Street Address: PO Box 310488
   City and County: Jamaica NY 11431 Queens
   State and Zip Code: NY 11431
   Telephone Number: 718 916 1892
   E-mail Address: Odencho01@aol.com

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

RECEIVED
DEC 0 5 2025
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Page 1 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1
- Name: Clinton Foundation / Bill Clinton
- Job or Title (if known): President (Former)
- Street Address: 55 West 125 St, 14th Floor
- City and County: New York, NY
- State and Zip Code: NY 10027
- Telephone Number: 212 397 2255
- E-mail Address (if known):

Defendant No. 2
- Name: Clinton Foundation / Hillary Clinton
- Job or Title (if known): Secretary of State (Former)
- Street Address: 1200 President Clinton Ave
- City and County: Little Rock
- State and Zip Code: Little Rock Arkansas, 72201
- Telephone Number: 501 370 8000
- E-mail Address (if known):

Defendant No. 3
- Name: Hillary Clinton / Bill Clinton
- Job or Title (if known):
- Street Address: 55 West 125 St
- City and County: New York, NY
- State and Zip Code: NY, 10027
- Telephone Number: 212 397 2255
- E-mail Address (if known):

Defendant No. 4
- Name: Anthony Rodham (Est.)
- Job or Title (if known):
- Street Address: 1200 President Clinton Ave
- City and County: Little Rock
- State and Zip Code: Arkansas 72201
- Telephone Number:
- E-mail Address (if known):

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[X] Federal question          [X] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A.  **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 USC §1331 This action arises under the Constitution and laws of the United States including RICO, Federal Ethics rules and Federal Procurement law. This court has Jurisdiction under the Alien Tort Statute (28 USC 1350)

B.  **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.  The Plaintiff(s)

    a.  If the plaintiff is an individual
        The plaintiff, *(name)* Jean Richard Severin, is a citizen of the State of *(name)* New York.

    b.  If the plaintiff is a corporation
        The plaintiff, *(name)* PTAH Global Initiatives is incorporated under the laws of the State of *(name)* New York and has its principal place of business in the State of *(name)* New York.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.  The Defendant(s)

    a.  If the defendant is an individual
        The defendant, *(name)* William Jefferson Clinton, is a citizen of the State of *(name)* New York. Or is a citizen of *(foreign nation)*

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.  If the defendant is a corporation

The defendant, *(name)* Clinton Foundation , is incorporated under the laws of the State of *(name)* New York + Arkansas , and has its principal place of business in the State of *(name)* New York + Arkansas .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

---

### III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Plaintiff alleges his Right to Return home to settle is being blocked by defendants ongoing support for terrorism in Haiti, has led to airport closure, mass displacement and migration; Airport closure and restricted routes manufactured fear. blocked lawful repatriation of Haitian citizens. Plaintiff alleges that this pattern amounts, in full legal and moral terms, to crimes against humanity including: coordinated obstruction of lawful repatriation violating international norms.

### IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Declare that defendants' conduct as described herein is unlawful, including: The obstruction of lawful repatriation and economic sovereignty of Ayiti. The diversion and misuse of Ayiti earthquake relief funds; The use of public office for private and donor-aligned gain; order the release of all unreleased records relate to: coordination between Clinton Foundation and US State Dept / USAID regarding Ayiti. IHRC decision making, contracts selection and project performance; Airport closure, travel restrictions and security-justified shutdowns affecting Ayiti.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/5/2025

Signature of Plaintiff: *Richard S____*
Printed Name of Plaintiff: Jean Richard Severin

### B. For Attorneys

Date of signing: _____

Signature of Attorney: _____
Printed Name of Attorney: _____
Bar Number: _____
Name of Law Firm: _____
Street Address: _____
State and Zip Code: _____
Telephone Number: _____
E-mail Address: _____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JEAN RICHARD SÉVÉRIN, Ph.D.
an individual U.S. citizen and
Founder, PTAH Global Initiatives,
Plaintiff,

v.

WILLIAM JEFFERSON CLINTON;
HILLARY RODHAM CLINTON;
THE WILLIAM J. CLINTON FOUNDATION;
UNITED STATES DEPARTMENT OF STATE;
UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (USAID);
ESTATE OF ANTHONY D. RODHAM, by its Personal Representative when identified;
and JOHN DOES 1–20 and XYZ CORPORATIONS 1–10,
Defendants.

Case No. _____

**VERIFIED CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
CIVIL RICO, AND VIOLATIONS OF INTERNATIONAL LAW**
(28 U.S.C. §§ 1331, 1350, 1361; 18 U.S.C. § 1962 et seq.)

Plaintiff, **Jean Richard Sévérin** ("Plaintiff" or "Sévérin"), appearing **pro se**, alleges as follows:

# I. PRELIMINARY STATEMENT

1. This action arises from a long-running pattern of **institutional corruption, economic sabotage, and manipulative use of disaster and development aid** directed at the Republic of Ayiti (Haiti) and its people.
2. Plaintiff seeks declaratory and injunctive relief, civil remedies under **RICO (18 U.S.C. § 1962)**, and redress under **federal and international law**, including the **Alien Tort Statute (28 U.S.C. § 1350)**, for conduct that has:
   - Diverted and misused post-earthquake aid funds;
   - Systematically undermined Ayiti's sovereignty and economy;
   - Obstructed lawful repatriation and travel; and
   - Displaced national sporting events and economic opportunities from Ayiti's soil.
1. Defendants—including former President **William Jefferson Clinton**, former Secretary of State **Hillary Rodham Clinton**, the **Clinton Foundation**, and U.S. agencies **State** and **USAID**—operated a coordinated network in which:
- **Donors and contractors** with close ties to Defendants were steered lucrative contracts;

- Decisions purporting to "rebuild" Ayiti were made through structures like the **Interim Haiti Recovery Commission (IHRC)**, dominated by Clinton-aligned actors;
- Long-term policies and aid practices effectively destroyed Ayiti's agricultural base, entrenched dependency, and blocked effective reconstruction.

1. Plaintiff brings this complaint both as:
- A **U.S. citizen taxpayer** harmed by misuse of federal funds and abuse of public office; and
- Representing the collective injury to the Ayitian people and diaspora caused by these schemes.

1. Plaintiff seeks:
- A **declaration** that Defendants' coordinated actions were unlawful;
- **Injunctive relief** to halt ongoing harmful operations and remove travel and repatriation blockades;
- **Disclosure and audit** of records and contracts; and
- **Civil RICO and ATS remedies** for the injuries described herein.

## II. JURISDICTION AND VENUE

1. This Court has **federal question jurisdiction** under **28 U.S.C. § 1331**, because this action arises under the Constitution and laws of the United States, including RICO, federal ethics rules, and federal procurement law.
2. This Court has jurisdiction under the **Alien Tort Statute (28 U.S.C. § 1350)** because Plaintiff asserts violations of well-established norms of international law, including:
- Obstruction of lawful repatriation and freedom of movement;
- Economic sabotage rising to crimes against humanity; and
- Systematic exploitation of a vulnerable population through manipulated aid and displacement.
1. This Court has **mandamus** jurisdiction under **28 U.S.C. § 1361** to compel federal agencies to perform non-discretionary duties and to enforce ethical and legal constraints on the use of public office.
2. Venue is proper in this District under **28 U.S.C. § 1391** because:
- Defendants **State** and **USAID** are headquartered in Washington, D.C.;
- Key decisions regarding Ayiti aid, contracts, and coordination with the Clinton Foundation were made in this District; and
- The acts and omissions complained of were planned, authorized, or executed in substantial part from this District.

## III. PARTIES

1. **Plaintiff Jean Richard Sévérin** is a citizen of the United States, a Ph.D. holder in Interdisciplinary Studies with a focus on Public Policy and Social Change,

Founder of **PTAH Global Initiative**. He resides in the United States and conducts his work from, among other addresses, **P.O. Box 310488, Jamaica, NY 11431**.
2. Plaintiff has undertaken multiple field missions to Ayiti and related territories to document economic, social, and security impacts of international policies, aid diversion, and destabilization.
3. **Defendant William Jefferson Clinton** is the former President of the United States and co-chair of the **Interim Haiti Recovery Commission (IHRC)** during the critical post-earthquake period.
4. **Defendant Hillary Rodham Clinton** is the former U.S. Secretary of State (2009–2013), who exercised substantial authority over foreign aid, election interference, development, and U.S. policy toward Ayiti during and after the 2010 earthquake.
5. **Defendant The William J. Clinton Foundation** (the "Clinton Foundation") is a U.S. nonprofit entity that received substantial donations and coordinated projects in Ayiti. It served as the central private conduit for donor influence and contract routing during the relevant period.
6. **Defendant U.S. Department of State** ("State Department") is a federal agency headquartered in Washington, D.C. It coordinated foreign aid, diplomatic support, and policy direction for Ayiti during the relevant period, including close coordination with the Clinton Foundation.
7. **Defendant U.S. Agency for International Development (USAID)** is a federal agency headquartered in Washington, D.C., responsible for administering U.S. foreign aid and contracting. USAID awarded large contracts related to Ayiti reconstruction and development to entities overlapping with Clinton Foundation donor networks.
8. **Defendant Estate of Anthony D. Rodham**, by its personal representative when identified, is named based on Rodham's role in Haiti-linked investment initiatives and potential financial entanglements involving influence over aid and reconstruction funding.
9. **Defendants John Does 1–20 and XYZ Corporations 1–10** are presently unidentified individuals and entities that participated in, benefitted from, or facilitated the schemes alleged herein.

## IV. STANDING

1. Plaintiff has **personal standing** as a U.S. citizen and taxpayer whose federal funds have been used in ways that violate law, ethics, and public trust, and as an individual who has suffered:
- Economic loss through travel, research, and foregone opportunities;
- Impediments to his ability to return and build in Ayiti; and
- Restrictions and practical blockades on movement, safety, and participation in national reconstruction and sport.
1. Plaintiff asserts **representative standing of Ayiti**, as the voice of Ayitians and diaspora who have suffered:
- Loss of homes, livelihoods, and agricultural sovereignty;

- Misuse and diversion of pledged aid funds;
- Systematic displacement and travel obstruction; and
- Removal of national sporting and economic events from Ayiti's soil.
1. Plaintiff has also suffered **direct, concrete harm** including:
- Inability to freely ship household goods and development materials to Ayiti due to sanctions, closures, and destabilization;
- Depletion of funds set aside for building in Ayiti as a result of travel obstacles, security risks, and artificial scarcity;
- Denial of meaningful opportunities to participate in and support Ayiti's national football team on home soil.

## V. FACTUAL ALLEGATIONS

### A. Clinton-Era Economic Sabotage of Ayiti's Agricultural Sovereignty (1994–1996)

1. In or around 1994, following U.S. intervention to reinstall President Jean-Bertrand Aristide, Ayiti was compelled to accept **International Monetary Fund (IMF)-** driven "structural reforms," including:
- Sharp reductions in tariffs on foreign agricultural imports;
- Privatization of state industries; and
- Removal of subsidies critical to domestic food production.
1. Central among these policies was the **elimination of rice tariffs**, allowing heavily subsidized U.S. rice—particularly from Arkansas, President Clinton's home state—to flood Ayiti's market.
2. As a direct result, Ayiti's rice farmers, unable to compete with artificially low U.S. prices, were driven out of business, destroying Ayiti's **food sovereignty** and entrenching long-term hunger, displacement, and dependency.
3. In 2010, President Clinton himself admitted in U.S. Senate testimony that these policies were a "mistake" with profound consequences for Ayiti. Plaintiff alleges this was not a mere policy error, but a form of **strategic economic sabotage** executed with knowledge of the foreseeable harm to Ayiti's agricultural economy.
4. These actions form **Case #002 – Strategic Economic Sabotage by the Clinton Administration**, as documented in Plaintiff's prior prosecutorial brief.

### B. Post-Earthquake Aid Diversion and Institutional Corruption (2010–2013)

1. Following the catastrophic **2010 earthquake**, billions of dollars were pledged for Ayiti's relief and reconstruction. Much of this aid was routed through structures controlled or heavily influenced by Defendants, including the **IHRC**, co-chaired by William Clinton.
2. The **Clinton Foundation**, acting through IHRC influence and in coordination with State and USAID, exercised centralized control over project selection and funding flows.

3. Rather than direct aid to victims and transparent rebuilding, funds were:
- Steered to **foreign corporations and contractors** with donor or political ties to Defendants;
- Consumed by administrative overhead and patronage networks; and
- Used to create a veneer of humanitarianism while leaving core needs unmet.
1. Housing projects remained incomplete, promised infrastructure was not delivered, and many Ayitians remained in precarious or temporary shelter long after funding was announced.
2. Plaintiff's **Case #003 – Influence, Access, and Institutional Corruption** sets out these patterns with supporting evidence, including:
- **Exhibit A** – Clinton Foundation IRS 990 filings (2010–2013), demonstrating donor–contractor overlap and revenue tied to Ayiti-related programs;
- **Exhibit B** – USAID Haiti contract awards showing major sums to a small group of contractors with ties to Clinton-aligned networks;
- **Exhibit C** – FOIA-released State Department emails evidencing coordination between senior State officials and Clinton Foundation executives, including "VIP donor" considerations;
- **Exhibit D** – GAO and OIG reports highlighting failed or underperforming Haiti projects with serious accountability gaps;
- **Exhibit E** – IHRC membership and contractor influence map showing structural overlap between public authority and private donor agendas.
1. These records collectively show a **RICO-style enterprise** in which federal power, nonprofit branding, and donor relationships were combined to direct relief funds and contracts for political and financial advantage, while Ayiti's people remained in poverty and displacement.

## C. Field Missions, Manufactured Instability, and Travel Obstruction (2025)

1. In April and September 2025, Plaintiff undertook field missions to Ayiti, traveling from New York through Miami and onward via limited and costly air routes, including:
- LaGuardia to Miami;
- Miami to Okap (approximately $665);
- Helicopter from Okap to Port-au-Prince (approximately $775 for a brief flight);
- Airplane from Port-au-Prince to Aux Cayes (approximately $224);
- Ground and coastal travel through Miragoâne, Anse-à-Veau, and Jérémie.
1. Plaintiff frequently had to sleep on airport floors awaiting rare flights, incur unplanned hotel stays, and bear repeated, excessive travel and logistical costs, all arising from **artificially constrained travel corridors and airport closures**.
2. On or about **September 21–29, 2025**, Plaintiff personally observed patterns in Port-au-Prince and surrounding areas where:
- Short bursts of gunfire were fired into the air at predictable times;
- No return fire or casualties were reported;
- Residents panicked and retreated indoors; and

- The effect was to clear public spaces and create the **appearance of uncontrollable unrest**.
1. On one such morning near Delmas 75, Plaintiff heard several loud shots between approximately 6–8 a.m., followed by fear and withdrawal in the community, with no corresponding battle, casualties, or legitimate security operation.
2. On another day, sounds resembled fireworks more than live combat, yet produced the same effect of fear and suppression of movement. As a multi-state concealed-carry permit holder familiar with firearms and explosives, Plaintiff recognized these as staged intimidation tactics.
3. These tactics function as **controlled destabilization**: generating fear sufficient to justify restrictions on travel and commerce, while allowing select actors and contractors to move and operate unimpeded.
4. Plaintiff also observed periods when **Port-au-Prince airport** appeared closed to the general public while:
- Multiple flights landed;
- Military or security personnel moved openly on the tarmac; and
- Foreign operations continued without transparency.
1. Plaintiff alleges that these patterns of controlled fear, selective access, and opaque airport operations are part of a broader scheme of **containment and obstruction of lawful repatriation**, consistent with the crimes outlined in Case #003.
2. Plaintiff's funds dedicated to building in Ayiti have been **depleted** due to repeated travel, inflated costs, and shipping restrictions. Sanctions and logistical blockades have prevented Plaintiff from sending household goods, equipment, and development materials to Ayiti, despite having sold property and acquired items in reliance on returning permanently.

### D. Displacement of National Football and Economic Opportunities

1. In **November 2025**, Plaintiff and his son traveled from **JFK to Curaçao** (round-trip) to attend Ayiti's FIFA World Cup qualifying matches, which had been moved from Ayiti under the justification of "insecurity."
2. Plaintiff's trip required out-of-pocket expenditures exceeding approximately **US $4,600** for flights, lodging, in-country transportation, and daily needs. These funds benefitted foreign hotels, resorts, car rental agencies, and vendors—**not** Ayitian businesses.
3. Plaintiff and his son experienced hostility and intimidation while attempting to support the national team in Curaçao, ultimately preventing them from safely attending the second match.
4. In Curaçao, a country with different language and culture, Plaintiff—an Ayitian national and advocate—was able to enter the team's meeting area unimpeded due to lack of proper communication and security. Only belatedly did the coach ask Plaintiff to leave. This incident illustrates the **security and cultural mismatches** created by displacing Ayiti's team and supporters abroad.

5. Plaintiff has long desired to **support, train with, and represent** Ayiti's national team, including as a potential player seeking to try out and represent his country in major tournaments. Forced displacement of the team and lack of stable home operations have denied him a basic ability to **locate and engage** with his national program on Ayiti's soil.
6. The **removal of Ayiti's home matches** and training from Ayiti forms part of a larger pattern of:
- Economic displacement (tourism and matchday revenue moved abroad);
- Symbolic displacement (stripping Ayiti of sovereign sporting visibility); and
- Psychological displacement (eroding national pride and unity tied to sport).
1. Plaintiff's **Exhibit F-1 – Field and Sport Displacement Documentation (2025)** details:
- The Curaçao mission (Section VII-A); and
- The field mission in Ayiti (Section VII-B), including travel costs, observed intimidation, and continuing obstruction.

### E. Right to Return, Airport Closures, and Crimes Against Humanity

1. Plaintiff alleges that the long-term pattern of:
- Airport closures and restricted routes;
- Manufactured instability and fear;
- Aid diversion and contractor dominance; and
- Mass displacement and "migration" programs framed as humanitarian,

constitutes a deliberate strategy to **contain** Ayiti's population and prevent effective sovereign recovery.

1. This strategy has:
- Blocked lawful repatriation of Ayitian citizens;
- Denied diaspora elders the ability to return home to die on their native soil;
- Prevented Plaintiff and others from permanently relocating, building, and investing in Ayiti; and
- Enabled continued extraction of resources and contracts under conditions of dependency and fear.
1. Plaintiff alleges that this pattern amounts, in full legal and moral terms, to **crimes against humanity**, including:
- Coordinated obstruction of lawful repatriation (violating international norms reflected in UDHR art. 13(2) and ICCPR art. 12(4));
- Use of airport closures and security narratives as tools of population control;
- Economic sabotage through aid manipulation and logistical blockage;
- Mass displacement engineered for profit and political leverage.

## VI. CAUSES OF ACTION

**COUNT I – DECLARATORY RELIEF**

(28 U.S.C. §§ 2201–2202)

1. Plaintiff realleges paragraphs supra..
2. An actual controversy exists regarding the legality of Defendants' coordinated conduct connecting public office, nonprofit influence, and aid distribution.
3. Plaintiff seeks a declaration that Defendants' conduct—including donor-aligned contract routing, use of public office to favor affiliated entities, and obstruction of Ayiti's sovereign recovery—is unlawful.

**COUNT II – CIVIL RICO**

(18 U.S.C. § 1962(c) and (d))

1. Plaintiff realleges paragraphs supra.
2. Defendants and their associates constituted an **enterprise** within the meaning of 18 U.S.C. § 1961(4), combining public offices, nonprofit structures, contractors, and donors.
3. Through this enterprise, Defendants engaged in **racketeering activity**, including but not limited to:
- Bribery and self-dealing (18 U.S.C. § 201);
- Theft or bribery concerning programs receiving federal funds (18 U.S.C. § 666);
- Wire fraud and related fraud schemes (18 U.S.C. § 1343);
- Conspiracy to defraud the United States (18 U.S.C. § 371);
- False statements and concealment (18 U.S.C. § 1001).
1. These acts were related, continuous, and directed toward diverting relief funds, steering contracts, and entrenching donor-aligned economic control.
2. Plaintiff and the people of Ayiti suffered **injury to property and business interests** through loss of aid, destruction of local industries, and ongoing dependency.
3. Plaintiff is entitled to civil RICO remedies, including **treble damages** and attorneys' fees (if later represented), as well as injunctive relief to halt ongoing racketeering-linked programs.

**COUNT III – VIOLATIONS OF INTERNATIONAL LAW**

(ALIEN TORT STATUTE – 28 U.S.C. § 1350)

1. Plaintiff realleges paragraphs supra.
2. Defendants' conduct constitutes violations of specific, universal, and obligatory norms of international law, including:
- Obstruction of the right to return to one's country;
- Economic coercion and sabotage causing mass deprivation and displacement;

- Exploitation of a disaster-affected population for profit and political leverage.
1. These actions rise to the level of **crimes against humanity**, including population control through displacement and containment.
2. Under the Alien Tort Statute, Plaintiff seeks remedies for these violations, including declaratory and injunctive relief and damages.

### COUNT IV – ABUSE OF PUBLIC OFFICE / ETHICS AND PROCUREMENT VIOLATIONS

1. Plaintiff realleges paragraphs above.
2. Defendant Hillary Rodham Clinton, as Secretary of State, and other public officials referenced herein, abused their public offices by:
- Promoting or favoring entities with which they or their spouses had political, fiduciary, or advisory relationships;
- Facilitating contracts and aid flows that bypassed neutral procurement and ethical standards.
1. Such conduct violates, inter alia:
- 5 C.F.R. § 2635 (Standards of Ethical Conduct);
- Procurement Integrity principles; and
- General constitutional and statutory duties of honesty and impartiality in public service.
1. Plaintiff seeks declaratory and injunctive relief, including referrals to oversight and ethics bodies.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. **Declare** that Defendants' conduct as described herein is unlawful, including:

1. The diversion and misuse of Ayiti earthquake relief funds;
2. The use of public office for private and donor-aligned gain;
3. The obstruction of lawful repatriation and economic sovereignty of Ayiti.

B. **Order the release** of all unreleased records related to:

1. Coordination between the Clinton Foundation and U.S. State Department/USAID regarding Ayiti;
2. IHRC decision-making, contractor selection, and project performance;
3. Airport closures, travel restrictions, and security-justified shutdowns affecting Ayiti.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5 day of December, 2025.

*[signature]*

C. **Enjoin Defendants and their affiliates** from continuing any operations in Ayiti or related programs that:

1. Displace civilians or obstruct repatriation;
2. Divert aid funds away from direct relief and genuine reconstruction;
3. Remove national events and opportunities, including sporting fixtures, from Ayiti's territory without transparent and lawful justification.

D. **Remove or prohibit travel restrictions** that prevent Plaintiff from:

1. Appearing in Court;
2. Traveling freely to and from Ayiti; and
3. Carrying out his duties as Acting Government of the Republic of Ayiti.

E. **Award civil RICO damages**, including treble damages, for injuries to Plaintiff's property, economic opportunities, and mission-related expenditures.

F. **Refer findings** of this Court to:

1. The U.S. Department of Justice (Public Integrity Section);
2. The Internal Revenue Service (for Clinton Foundation review);
3. Appropriate international human rights and anti-corruption bodies.

G. Award **costs and such other and further relief** as the Court deems just and proper.

Respectfully submitted,

**Jean Richard Sévérin**
Founder, PTAH Global Initiatives
Pro Se Plaintiff
P.O. Box 310488
Jamaica, NY 11431
Tel: 718-916-1892
Email: ptahglobalinitiatives@gmail.com

Dated: 12/5, 2025

## VERIFICATION

I, **Jean Richard Sévérin**, am the Plaintiff in this action. I have read the foregoing **Verified Civil Complaint** and know the contents thereof. The factual statements contained herein are true and correct to the best of my knowledge, information, and belief, except as to those matters stated on information and belief, and as to those matters I believe them to be true.